IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

EASTERN SAVINGS BANK, FSB,        )
                                  )
              Plaintiff,          )
                                  )
      v.                          )        1:14CV849
                                  )
RACHEL DUGGER, ROBERT A.          )
DUGGER, SR., POORE SUBSTITUTE     )
TRUSTEE, LTD, in its capacity     )
as substitute trustee, ANDREW     )
TOBIAS, JANE KERESTES,            )
MARTHA RAISS, and MESSER          )
CAPARELLO, P.A., f/k/a MESSER     )
CAPARELLO & SELF, P.A.,[1]        )
                                  )
              Defendants.         )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Eastern Savings Bank, FSB ("ESB") initiated this action

seeking to foreclose a deed of trust granted by Rachel Dugger

and Robert A. Dugger, Sr. (collectively, "Counterclaimants"),

which encumbers certain real property at 10837 N.C. Hwy 62 N.,

Milton, North Carolina.  ESB also seeks to collect the amount

due under the note that the deed of trust secures.  (Doc. 11.)

---

[1] The parties submitted a Consent Motion to Substitute Poore
Substitute Trustee, LTD as a Defendant in this matter for John
M. Thomas, the original trustee on the Deed of Trust, pursuant
to Fed. R. Civ. P. 25(c).  (Doc. 28.)  This motion was granted
by the court on August, 12, 2015.  (See Doc. 29.)

Counterclaimants subsequently filed counterclaims against ESB under North Carolina law, including allegations of conversion, unjust enrichment, and unfair and deceptive acts or practices in or affecting commerce. (Doc. 13.)

Presently before this court is ESB's Motion to Dismiss these Counterclaims. (Doc. 19.) Counterclaimants have responded (Doc. 21), and ESB has filed a reply. (Doc. 22.) A hearing was held on the motion on June 25, 2015, and this matter is now ripe for adjudication. For the reasons that follow, this court will grant ESB's motion and dismiss these counterclaims without prejudice.

## I.  **BACKGROUND**

On March 22, 2007, ESB recorded a deed of trust with the Register of Deeds for Caswell County, North Carolina in Book 512 at Page 633 ("Deed of Trust"). The Deed of Trust encumbers certain real property in Caswell County, North Carolina, commonly known as "Longwood," which is more particularly described in ESB's Deed of Trust. (See Amended Complaint ("Am. Compl."), Ex. B, Deed of Trust (Doc. 11-2).) The Deed of Trust, signed by both Counterclaimants, secures a Note in the amount of $362,500.00. (See Am. Compl., Ex. A, Note (Doc. 11-1).)

ESB alleges that Counterclaimants have failed to pay amounts that have come due under the terms of the Note since

- 2 -

January 1, 2014, and ESB has elected to accelerate the full
unpaid balance due under the Note and Deed of Trust and other
agreements between the parties, amounting to a total
indebtedness of $405,471.98. (See Am. Compl. (Doc. 11) ¶¶ 26-
29.) ESB seeks foreclosure of Longwood to satisfy this
indebtedness. (See id. ¶ 31.)[2]

In their Answer to ESB's Amended Complaint,
Counterclaimants deny several key allegations made by ESB and
assert a number of defenses challenging the foreclosure. (See
Ans. to Pl.'s First Am. Compl. & Counterclaims of Defs. Rachel
Dugger and Robert A. Dugger, Sr. ("Counterclaims") (Doc. 13) at
6-8.)[3] However, in addition to these defenses to the foreclosure
action, Counterclaimants set out three counterclaims against
ESB, alleging conversion, unjust enrichment, and unfair and
deceptive acts or practices. (See id. at 8-11.)

---

[2] The other Defendants in this matter are not relevant for
the purposes of this motion. Defendant Poore Substitute Trustee
is a party due to its role as substitute trustee on the Deed of
Trust. (Docs. 10, 11, 28, 29.) Defendant Messer Caparello,
P.A. is a junior lienholder, has consented to an order
extinguishing its judgment lien, and has requested any surplus
funds from the foreclosure. (Doc. 7, 23.) The Clerk for the
Middle District of North Carolina has issued an Entry of Default
against all other Defendants, who are also junior lienholders.
(Doc. 18.)

[3] All citations refer to the page number in the bottom
right-hand corner stamped during the electronic filing process
and as indicated on CM/ECF.

- 3 -

The events that led to the underlying dispute began on December 26, 2013, when the house on the subject property, Longwood, caught fire and was completely destroyed. (Id. at 9.) Counterclaimants indicate that they had purchased a homeowners insurance policy from Carolina Farmers Mutual Insurance Company ("Carolina Farmers Mutual"), Number NCFO 2K90045 (the "Policy"), to cover Counterclaimants against such loss. (Id. at 8.) ESB was named as the Mortgagee on the Policy. (Id. at 9.)

However, despite the damage to the property, Counterclaimants did not receive payment from Carolina Farmers Mutual. (Id.) Instead, the proceeds of the Policy, $336,536.00, were paid to ESB as the Mortgagee on the Policy. (Id.) Counterclaimants assert that ESB is now liable based on its continued efforts to foreclose Longwood despite ESB's acceptance of payment from Carolina Farmers Mutual. Counterclaimants allege that "rather than crediting [the insurance proceeds] to the Note, toward payments on the Note, or turning that amount over to these Defendants," ESB has improperly retained the insurance proceeds. (Counterclaims (Doc. 13) at 9-10; see also id., Ex. B, May 5, 2014 Letter from ESB to Counterclaimants (Doc. 13-2).) Counterclaimants contend that these actions, and the subsequent finding of default and

- 4 -

initiation of foreclosure proceedings, are tortious.  ESB has now moved to dismiss these counterclaims.

Before considering the merits of these counterclaims, this court notes there are several peculiar aspects of Counterclaimants' pleading.  First, Counterclaimants' pleading does not specify why Carolina Farmers Mutual paid the amount to ESB and not to Counterclaimants.  Yet, the documents incorporated by reference into Counterclaimants' pleading indicate that Carolina Farmers Mutual "voided [the] policy as to Robert and Rachel Dugger for material misrepresentations made in the application process."  (Counterclaims, Ex. A, May 2, 2014 Letter from Carolina Farmers Mutual to ESB (Doc. 13-1).) Carolina Farmers Mutual is not joined as a party to this suit, and this court is not asked to determine the validity of Carolina Farmers Mutual's decision to void the Policy.  Instead, Counterclaimants have informed this court that they have initiated state court proceedings challenging this determination made by Carolina Farmers Mutual.

Second, it is not clear whether Counterclaimants admit or deny that they have failed to pay as scheduled on the Note and related agreements.  Counterclaimants instead provide a qualified response to ESB's allegation that Counterclaimants have not made payments on the Note as they have come due,

- 5 -

drawing this court's attention to the insurance payment rather than responding directly to the allegation of non-payment. (See Am. Compl. (Doc. 11) ¶ 26; Counterclaims (Doc. 13) at 6, ¶ 26.) In another area of their pleading, Counterclaimants fully deny the allegation that "Defendant Rachel Dugger has materially breached the terms of the Mortgage Loan by failing to pay all amounts that are due under the terms of the Mortgage Loan." (See Am. Compl. (Doc. 11) ¶ 40; Counterclaims (Doc. 13) at 9, ¶ 40.) Yet, nowhere in their pleading do Counterclaimants assert that they have continually made payments on the Note or satisfied in full the debt due under the Note and Deed of Trust. (See Am. Compl. (Doc. 11) ¶ 29 (indicating that the total amount due under the Note is $405,471.98); Counterclaims (Doc. 13) at 6, ¶ 29 (denying all parts of the allegation of the amount due under the Note).) The ambiguities created by these various representations, while they are manifested in Counterclaimants' responses to ESB's allegations, have an impact on whether Counterclaimants have stated a plausible claim for relief on their counterclaims and will be considered below.

## II. **LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to make a motion to dismiss due to the opposing party's failure to state a claim upon which relief can be

- 6 -

granted.  Fed. R. Civ. P. 12(b)(6).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  The burden remains on the party making the claim "to allege facts sufficient to state all the elements of [Plaintiff's] claim," Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003), and "to raise a reasonable expectation that discovery will reveal evidence" of the misconduct alleged, see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

Granting a motion under Rule 12(b)(6) is proper when the complaint's factual allegations, read as true, fail as a matter of law to state a plausible claim for relief.  Iqbal, 556 U.S at 678.  In determining if a claim has "facial plausibility," a court is not required to accept "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements," id., unsupported legal allegations, Revene v. Charles County Comm'rs, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, Papasan v. Allain, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979).

- 7 -

## III. <u>**ANALYSIS**</u>

Counterclaimants assert three bases for their counterclaims against ESB: (1) conversion; (2) unjust enrichment, and (3) unfair and deceptive acts or practices in violation of section 75-1.1 of the North Carolina General Statutes. All three causes of action are based on ESB's decision not to credit Counterclaimants for the Policy proceeds ESB received from Carolina Farmers Mutual. For the following reasons, this court finds that all three causes of action fail to state a claim.

### A. <u>**Conversion**</u>

Counterclaimants allege that, by failing to credit the Policy proceeds toward the debt owed under the Note or turn the Policy proceeds over to Counterclaimants, ESB has unlawfully converted and retained their property, namely the $336,536.00 that Counterclaimants assert is due to them. (Counterclaims (Doc. 13) at 10, ¶ 10.) This court finds that Counterclaimants have not stated a claim based on these allegations.

"Conversion is defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" <u>Gallimore v. Sink</u>, 27 N.C. App. 65, 67, 218 S.E.2d 181, 183 (1975) (quoting <u>Wall v. Colvard, Inc.</u>, 268 N.C. 43, 149 S.E.2d 559 (1966)).

- 8 -

To state a claim for conversion, a party must show "(1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; and (4) to the exclusion of the rights of the true owner." B.E.E. Int'l, Ltd. v. Hawes, 381 F. Supp. 2d 488, 493 (M.D.N.C. 2005) (citing Peed v. Burleson's, Inc., 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956)).

As to the ownership of the Policy proceeds, this court finds that Counterclaimants have not plausibly alleged that they are the "true owners" of the payments made by Carolina Farmers Mutual because Counterclaimants have offered no facts to support this conclusion. Whether an individual is due money under an insurance policy is a mixed question of law and fact. In their pleading, Counterclaimants merely state the legal conclusion that they are entitled to the money paid by Carolina Farmers Mutual to ESB. (See Counterclaims (Doc. 13) at 10, ¶ 10 ("[ESB] has unlawfully converted and retained $336,536.00 which is due to these [Counterclaimants].").) This court is not required to accept this unsupported legal conclusion as true and Counterclaimants have offered no indication that it is true or provided any facts that would allow this court to resolve this question.

- 9 -

Moreover, this court finds that the facts Counterclaimants have asserted are inconsistent with a finding that they are the "true owners" of the insurance payments. Counterclaimants do not challenge the validity of any of the agreements entered into by the parties to this suit, including the Note, the Deed of Trust, and the forbearance agreement between ESB and Counterclaimants, along with the Policy issued by Carolina Farmers Mutual. (See Counterclaims (Doc. 13) at ¶¶ 19-22, 25, 27, 39 (responding that the documents referenced in ESB's Amended Complaint are the best evidence of their own content).) Counterclaimants do not allege that Carolina Farmers Mutual has approved their claim, or that Carolina Farmers Mutual has now paid the entire amount owed ESB such that ESB can no longer foreclose, or that Carolina Farmers Mutual intended for the Policy proceeds to be used to rebuild or to be applied to the mortgage.

Rather, Counterclaimants recognize that Carolina Farmers Mutual made the decision to void the Policy held by Counterclaimants and to pay ESB instead. (See Counterclaims (Doc. 13) at 9, ¶ 6; id., Ex. A, May 2, 2014 Letter from

Carolina Farmers Mutual to ESB (Doc. 13-1)),[4] and the Policy, which Counterclaimants reference in their pleading, specifically provides that Carolina Farmers Mutual has the power to void the Policy under certain circumstances, (see ESB's Mem. in Supp. of Mot. to Dismiss Counterclaims, Ex. 1, Policy (Doc. 20-1) at 24, § 2.)[5] Counterclaimants may be challenging this determination in state court, but at this point, Counterclaimants have not put forward any facts indicating that the determination made by Carolina Farmers Mutual is invalid or that Counterclaimants are the "true owners" of the insurance payments.  Therefore, without any basis to find that Counterclaimants are the true owners of the insurance payments made by Carolina Farmers Mutual, this

---

[4] The exhibits attached to Counterclaimants' pleading are part of the pleading pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, and this court can consider these documents for purposes of deciding this motion.

[5] This court can consider the Note, Deed of Trust, Policy, and all other agreements entered into by Counterclaimants, even though these documents were attached to ESB's Amended Complaint and ESB's Memorandum in Support of its Motion to Dismiss and are thus outside of Counterclaimants' pleading, because (1) the contractual relationship and the debt between the parties that these documents represent, along with the insurance policy, are integral to the counterclaims, and (2) Counterclaimants do not doubt their authenticity.  See Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999); CACI Int'l v. St. Paul Fire & Marine Ins. Co., 567 F. Supp. 2d 824, 831 (E.D. Va. 2008). Moreover, this court is able to examine the terms of the Policy because the terms of all fire insurance policies are governed and provided by statute.  See N.C. Gen. Stat. § 58-44-16.

court must find that Counterclaimants have not stated a plausible claim for conversion against ESB.

In the alternative, this court finds that Counterclaimants have not plausibly alleged that ESB has committed an "unauthorized assumption" of the right of ownership over the Policy proceeds to the exclusion of Counterclaimants' rights, even if this court accepts that Counterclaimants are the "true owners" of the Policy proceeds. At this point, ESB has only (1) accepted the funds sent by Carolina Farmers Mutual; (2) chosen not to forgive Counterclaimants' entire indebtedness based on the payment of those Policy proceeds; and (3) refused to credit Counterclaimants' pending payments with the Policy proceeds. (See Counterclaims (Doc. 13) at 9-10, ¶¶ 8-9.) However, none of these actions support a conversion counterclaim because all were proper, authorized actions for ESB to take.

First, Counterclaimants have not shown that it was improper for ESB to receive the payments from Carolina Farmers Mutual. Counterclaimants have recognized that ESB was listed as Mortgagee on the Policy. (See Counterclaims (Doc. 13) at 9, ¶ 3; see also Policy (Doc. 20-1) at 3.) North Carolina courts have recognized that a "standard mortgage clause" in a policy for fire insurance, like the one at issue here, "is considered a distinct and independent contract between the insurance company

and mortgagee." See Tech Land Dev., Inc. v. S. Carolina Ins. Co., 57 N.C. App. 566, 568, 291 S.E.2d 821, 823 (1982). The Policy provides that ESB, as mortgagee, was to receive payment if Carolina Farmers Mutual decided not to pay Counterclaimants. (See Policy (Doc. 20-1) at 26, § 14; see also Deed of Trust (Doc. 11-2) at 6, § 5 (requiring all insurance policies issued to Counterclaimants on the property to have a "standard mortgage clause" naming ESB as mortgagee).) This scenario complies with the relevant North Carolina statute. See N.C. Gen. Stat. § 58-44-16(f)(11). Despite these provisions to the contrary, Counterclaimants' pleading does not attempt to explain why it was improper for ESB to retain the money paid pursuant to this "distinct and independent contract." As a result, this court finds that Counterclaimants have not plausibly alleged that ESB improperly took control of the Policy proceeds by merely retaining the funds.

Second, Counterclaimants do not plausibly assert that it was improper for ESB to initiate foreclosure proceedings even after receiving the Policy proceeds. Counterclaimants do not dispute that they are in default. (See Counterclaims (Doc. 13) at 6, ¶¶ 26-28 (asserting a qualified denial of the allegation that Counterclaimants have not paid amounts that have come due under the loan).) At the time ESB received the $336,536.00

- 13 -

payment from Carolina Farmers Mutual, Counterclaimants owed ESB $350,565.14 in unpaid principal and $24,862.05 in unpaid interest on the Note. (See Am. Compl. (Doc. 11) ¶ 29.) However, it is clear from the pleading that, even if the Policy proceeds were used to offset part of the debt, the Policy proceeds would not fully satisfy the principal balance, not to mention the other costs owed to ESB. Additionally, the statute governing fire insurance policies specifically provides that any payment by an insurance company and any subrogation that occurs will not "impair[] the mortgagee's right to sue." N.C. Gen. Stat. § 58-44-16(f)(11). Thus, the facts underlying the counterclaims show that ESB has not converted Counterclaimants' property by receiving the funds but then initiating foreclosure proceedings.

Third, Counterclaimants have not plausibly shown that it was improper for ESB to retain the Policy proceeds without crediting that amount to Counterclaimants outstanding payments. The explicit terms of the Note between ESB and Counterclaimants state that ESB was not required to excuse Counterclaimants' monthly payments based on any insurance proceeds ESB received. (See Am. Compl., Ex. B, Deed of Trust (Doc. 11-2) at 4, ¶ 2 ("Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not

- 14 -

extend or postpone the due date, or change the amount, of Periodic Payments.").) Counterclaimants have admitted to the continued validity of the Deed of Trust, (see Counterclaims (Doc. 13) at 5, ¶ 21), and based on these provisions of the Deed of Trust, it was proper for ESB to continue to demand monthly payments from Counterclaimants without crediting Counterclaimants for the Policy proceeds, even if Counterclaimants were the "true owner" of those proceeds. As referenced above, Counterclaimants do not assert that they have continued to make monthly payments. (See Am. Compl. (Doc. 11) ¶ 26; Counterclaims (Doc. 13) at 6, ¶ 26.) Therefore, at this point, Counterclaimants have not plausibly alleged that ESB has converted any of Counterclaimants' property by continuing to require monthly payments and initiating foreclosure proceedings based on Counterclaimant's failure to make those monthly payments.

Ultimately, principles of subrogation support the conclusion that ESB has not improperly converted Counterclaimants' property. Rather than treating the Policy proceeds as their own property, ESB is now only holding the Policy proceeds in trust for itself and Carolina Farmers Mutual, pending the outcome of this suit and other relevant litigation. The Supreme Court of North Carolina has explained:

- 15 -

> When the insurance company has paid only part of the
> loss resulting from defendant's tort, the insurer is
> subrogated only to the extent of the payment.  The
> injured party has the right to maintain an action for
> all the damage resulting from the tortious act of
> defendant.  He holds the recovery in trust for himself
> and the insurance company in accordance with their
> respective rights.

Smith v. Pate, 246 N.C. 63, 68, 97 S.E.2d 457, 460 (1957)

(citations omitted).  Here, Carolina Farmers Mutual is partially

subrogated based on its payment of the Policy proceeds to ESB at

less than the full value of Counterclaimants' indebtedness.  See

N.C. Gen. Stat. § 58-44-16; (see also Counterclaims, Ex. A, May

2, 2014 Letter from Carolina Farmers Mutual to ESB (Doc. 13-1)

(acknowledging that Carolina Farmers Mutual was now subrogated

to ESB based on its partial payment).)

    ESB, as the "injured party[,] has a right to maintain an

action for all the damage resulting from" Counterclaimants'

failure to make their monthly payments as they came due.  See

Pate, 246 N.C. at 68, 97 S.E.2d at 460 (emphasis added).

Therefore, in addition for it being proper for ESB to initiate

foreclosure actions against Counterclaimants, it was also proper

for ESB not to credit the Policy proceeds against the total

amount due by Counterclaimants, and to seek a foreclosure remedy

- 16 -

for the entire indebtedness.[6]  In doing so, ESB has not

improperly converted Counterclaimants' property but is merely

holding part of the eventual recovery in trust for itself and

Carolina Farmers Mutual until all legal matters are resolved.

With these principles of subrogation underlying the

counterclaims, the allegation that ESB has converted

Counterclaimants' property is thus implausible.

Therefore, for all of these reasons, this court will

dismiss the conversion counterclaim.  However, because there is

the possibility, albeit remote, that ESB could, because of the

procedural posture of the two civil actions and a duty to

provide credits in this action, convert Counterclaimants'

property within the course of these proceedings, this court will

dismiss this and each of the other counterclaims without

prejudice.

## B.  **Unjust Enrichment**

Alongside its allegations of conversion, Counterclaimants

allege that ESB has been unjustly enriched by the $336,536.00

that it has received from ESB and that it has been able to use

for its own benefit.  (Counterclaims (Doc. 13) at 10, ¶¶ 11-12.)

---

[6] The amount due on the Note and Deed of Trust is the full
value of the indebtedness based on the operation of the
acceleration clause.  (Deed of Trust (Doc. 11-2) at 13, § 22.)

In order to establish a claim for unjust enrichment, the Counterclaimants must show that they "conferred a benefit on the other party.  The benefit must not have been conferred officiously . . . .  The benefit must not be gratuitous and it must be measurable. . . . [T]he defendant must have consciously accepted the benefit."  Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988).

Similar to the conversion counterclaim, this court finds that Counterclaimants have failed to state a claim for unjust enrichment.  Here, Counterclaimants have not conferred a benefit on ESB that led to ESB receiving $336,536.00; Counterclaimants' pleading indicates that Carolina Farmers Mutual made the determination to pay ESB.  (See Counterclaims (Doc. 13) at 9, ¶ 6.)  Carolina Farmers Mutual's decision, as a third party, to pay ESB cannot serve as the basis for an unjust enrichment claim by Counterclaimants against ESB, even if ESB benefited from that decision and Counterclaimants were injured by it.  See Sellers v. Morton, 191 N.C. App. 75, 84, 661 S.E.2d 915, 923 (2008).  Therefore, for this reason as well as the reasons stated as to the conversion counterclaim, the facts Counterclaimants have presented do not plausibly show that ESB has accepted a benefit from Counterclaimants by retaining the Policy proceeds from Carolina Farmers Mutual and then initiating foreclosure

- 18 -

proceedings. Therefore, Counterclaimants have not stated a plausible claim for unjust enrichment.

Counterclaimants' argument in their briefing indicates that they find ESB's actions to constitute unjust enrichment because it will allow for "double recovery" if ESB keeps all of the Policy proceeds, forecloses Counterclaimants' property, and keeps all proceeds from the foreclosure sale. (See Counterclaimants' Resp. (Doc. 21) at 10.) Counterclaimants are correct that courts, including another court in this district, have recognized that "allow[ing] recovery of insurance proceeds by the mortgagee after full satisfaction of the debt would amount to the mortgagee's unjust enrichment." See United States v. Lititz Mut. Ins. Co., 694 F. Supp. 159, 161 (M.D.N.C. 1988); Tech Land Dev., 57 N.C. App. at 569, 291 S.E.2d at 823. However, such a claim is not ripe because these actions have not happened yet. At this point, ESB has not foreclosed on Counterclaimants' property, and Counterclaimants' debt has not been satisfied. Therefore, Counterclaimants have not suffered an actual injury at this point and seek redress for contingent future events that may not occur at all - something this court

cannot provide.[7]  See Texas v. United States, 523 U.S. 296, 300

(1998).  Additionally, based on the principles of subrogation

and the subrogation provisions in the Policy, (see Policy (Doc.

20-1) at 26, § 14(c)(1)), Carolina Farmers Mutual will be able

to recover from ESB up to the amount that Carolina Farmers

Mutual has paid even if ESB is somehow overcompensated by the

payment of the insurance proceeds and any foreclosure.  See N.C.

Gen. Stat. § 58-44-16(f)(11).  This court agrees it would be

inappropriate for ESB to receive a double recovery as a result

of any foreclosure proceeding supervised by this court.  To

ensure this does not happen, this court will require an

accounting at the end of any foreclosure proceeding so that this

court may review who receives the proceeds from any foreclosure

sale along with the Policy proceeds and may ensure that ESB

receives only what it is owed.

Accordingly, there is currently no basis for an unjust

enrichment claim, and in fact, this issue may never arise.  In

the event the issue does arise, this court will take up the

_____

[7] Counterclaimants also claim that their debt to ESB confers
a benefit on ESB that could be used to state a claim for unjust
enrichment.  However, because there is a contract between the
parties concerning that debt, that contract governs the claim,
and this court will not find unjust enrichment in ESB enforcing
that contract.  See Booe, 322 N.C. at 570, 369 S.E.2d at 556.

- 20 -

issue at that time.  As a result, this court must dismiss this counterclaim without prejudice.[8]

## C.    **Unfair and Deceptive Acts of Practices**

Based on the same conduct outlined above, Counterclaimants argue that ESB has committed an unfair and deceptive act or practice in violation of Section 75-1.1 of the North Carolina General Statutes.

Section 75-1.1 of the North Carolina General Statutes declares as "unlawful" all "[u]nfair methods of competition in or affecting commerce" or "unfair or deceptive acts or practices in or affecting commerce."  N.C. Gen. Stat. § 75-1.1(a).  To show that an act or practice violates Section 75-1.1, a plaintiff must demonstrate (1) an unfair or deceptive act or practice - meaning that it "offends established public policy;" is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers;" or has a tendency to deceive, see Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 72, 653 S.E.2d 393, 399 (2007); (2) the act or practice was in or affecting commerce; and (3) the act or practice

_____

[8] This court notes that, even though it is dismissing these counterclaims, Counterclaimants have asserted several defenses relating to ESB's acceptance of the Policy proceeds.  (See Counterclaims (Doc. 13) at 7-8.)  These defenses will allow Counterclaimants to raise these issues again at the appropriate time to prevent a "double recovery."

proximately caused the injury to the plaintiff. See Boyce &
Isley, PLLC v. Cooper, 153 N.C. App. 25, 35, 568 S.E.2d 893, 901
(2002).

For the reasons explained in this court's discussion of the
conversion and unjust enrichment counterclaims, this court finds
that Counterclaimants have not sufficiently pled that they were
owed the Policy proceeds paid by Carolina Farmers Mutual to ESB
or that ESB wrongly retained those proceeds. As a result,
Counterclaimants have not pled an injury that was proximately
caused by ESB's actions and, thus, have not stated a plausible
cause of action under Section 75-1.1. See Bob Timberlake
Collection, Inc. v. Edwards, 176 N.C. App. 33, 42, 626 S.E.2d
315, 323 (2006); Se. Shelter Corp. v. BTU, Inc., 154 N.C. App.
321, 330, 572 S.E.2d 200, 206 (2002).

IV.  **CONCLUSION**

**IT IS THEREFORE ORDERED** that ESB's Motion to Dismiss
Counterclaims (Doc. 19) is **GRANTED** and that the counterclaims
filed by Counterclaimants Rachel Dugger and Robert A. Dugger,
Sr., are **DISMISSED WITHOUT PREJUDICE.**

This the 14th day of August, 2015.

_____
                      United States District Judge